[Civ. No. 6125.   Third Appellate District.—October 29, 1938.]

CALIFORNIA GIBSON, County Treasurer, etc., et al., Plaintiffs and Respondents, v. RIVER FARMS COMPANY OF CALIFORNIA (a Corporation), Defendant and Respondent; FREDERICK F. COOPER et al., Interveners and Respondents; MARY E. MORRIS, Intervener and Appellant.

758

Clark, Nichols & Eltse for Intervener and Appellant.

A. C. Huston and Thos. Rutledge for Plaintiffs and Respondents.

A. I. Diepenbrock for Defendant and Respondent.

Milton T. Farmer for Interveners and Respondents.

PULLEN, P. J.—This is an appeal by an intervening bondholder from a judgment in an action to quiet title to some 13,000 acres of land, divided in 29 separate tracts lying within the boundaries of Reclamation District 108 and assessed to River Farms Company of California, a corporation. Reclamation District 108 comprises approximately 57,000 acres lying principally in Colusa County, but with a part in the county of Yolo.

Assessment No. 5 of Reclamation District 108, amounting to some $3,407,000, was, in 1923, duly levied upon all the lands in the district, including the 29 parcels here in controversy. Thereafter, and after certain payments were made, bonds in the amount of approximately $3,142,000 were issued. Prior to the call of October 1, 1931, hereafter referred to, landowners had delivered to the county treasurer, for cancellation in reduction of the lien upon these lands, bonds in the sum of $11,000, leaving outstanding on assessment No. 5, $3,131,000. Of this amount, intervener and appellant Mary E. Morris is the owner of some $300,000, and intervener Cooper and his committee represent approximately $640,000.

On October 1, 1931, California Gibson, as county treasurer, issued a call for an amount necessary to pay the instalment of interest due January 1, 1932. Defendant herein, with others, failed to make their payments as required by this call and the county treasurer published a notice of the amount of the delinquency and other particulars required by law, and further gave notice that unless paid each parcel would, on December 29, 1931, be sold to pay such delinquent in-

stalment. No payment having been made by that date, the county treasurer offered this property of the River Farms for sale. No bids were made and it was, as provided by law, sold by California Gibson, as treasurer, to California Gibson, a trustee for the district.

It was by virtue of this sale that plaintiff, California Gibson, claiming, as trustee, to be the owner of these lands, brought this suit to quiet title.

To the complaint, the River Farms Company of California filed an answer, setting up various defects in the proceedings taken to enforce the collection of the amount due upon the bonds, and asserted the deed was invalid, and asked the court to adjudge that River Farms Company was still the owner of the lands involved.

Thereupon Cooper and his committee intervened in behalf of the trustee, as did also Mary E. Morris, both claiming defendant was estopped to question the illegality of the proceedings on the sale, and that if title were not upheld in the trustee the security for the bonds would be impaired; but also prayed that if the court should determine the defendant was entitled to any relief, then the granting of such relief shall be upon the condition that defendants do equity by paying all calls with interest and penalties.

The cause came on for trial, and it was there conceded that the proceedings preliminary to the sale, including the calls on the assessment, were void and the sale itself was invalid. It was also established that beginning in 1931 and each year thereafter the state and county taxes upon the lands in question had become delinquent, and in 1937 these lands had been deeded to the state for such tax delinquency and that after so acquiring the title the state had leased these tracts to River Farms Company, which had entered into possession. It also appeared that the trustees of the district had served notice upon the River Farms Company to quit the lands, which act had been followed by a notice from the state to the trustees of the district that they themselves surrender possession to the state.

After a trial upon the issues thus presented the court held that defendant River Farms Company was entitled to have its title quieted against the claims of plaintiff, but only upon the condition of doing equity.

The court in its interlocutory decree particularly specified in what manner defendant must do equity, and among other conditions provided that defendant must pay all instalment calls on account of assessment No. 5 from October 1, 1931, up to and including October 1, 1937, plus all subsequent calls on said assessment and statutory penalties; also pay all taxes and other proper disbursements paid by plaintiffs prior to defeasance; pay legal interest on all of the foregoing items, less the net proceeds realized by plaintiffs in the operation of said lands with interest thereon. The decree permitted defendant until November 25, 1938, within which to work out this defeasance and to redeem all or less than all of the twenty-nine tracts of land here involved and further recognized defendant's right to apply against redemption debits all the 1938 crop returns.

The decree further provided that the defendant River Farms Company was to relinquish the leasehold interest which it had acquired from the state of California and to collaborate in securing a substitute lease from the state in favor of the trustees of the district, who in turn were to sublease the property to the defendant. The decree further provided for the appointment of a receiver, primarily for the purpose of carrying out the directions of the court during the redemption of these lands.

This appeal from the judgment is taken by intervener Mary E. Morris alone. The attack made by Mary E. Morris upon the judgment is directed toward the terms laid down by the trial court as a condition to the granting of affirmative relief in favor of defendant. This attack is divided into three parts, first, the lack of power in the court to supersede the trustees of the district in the performance of their duties under section 3466a of the Political Code, second, a claimed over-allowance of time allotted to defendant to effect a redemption, and, third, the impropriety in the method of allocation of 1938 crop credits.

Taking up these objections in the order named, we will consider first the power of the court to appoint a receiver, and the claim of deprivation of plaintiffs' rights under section 3466a of the Political Code. In answer to the charge that the court was without power to appoint a receiver, it need merely be recalled that if the plaintiffs had a right to bring this action, which they apparently did under sec-

tion 3466a of the Political Code, then the court, having jurisdiction, had the power to appoint a receiver and to prescribe the means of making the judgment effective.

Section 3466a of the Political Code provides:

"Where any land has been sold for a delinquent assessment pursuant to the provisions of Sections 3466, 3480 or 3480a of the Political Code for a delinquent assessment or installment of the same and no redemption has been made and the time for redemption has expired, the district shall have the right to the possession of the land so sold and unredeemed."

Under this section the trustees had the right to possession after the sale until their title was successfully challenged.

In the case at bar all the assessment calls from October 1, 1931, on were invalid as well as the sales and deeds thereunder. The judgment in effect was therefore that there were no sales pursuant to sections 3466, 3480 or 3480a of the Political Code, and neither the time nor the right of redemption had begun to run, and that the district had no right of possession of these lands and its trustees had no right of management or control, and that the River Farms Company was entitled to retake possession of its properties. Appellant therefore was not aggrieved by the order of the court appointing a receiver, for such right of possession upon the part of defendant would have continued until there had been a further call followed by a delinquency and valid sale, subject to a year's right of redemption prior to the loss of title and the right of possession. If that is true, defendant River Farms Company would have had such right of possession and the right to occupy and crop the properties involved throughout the year 1938, and any profits derived from such possession and cropping would have belonged to the River Farms Company, with the right to keep the same or to apply such proceeds as it pleased toward the redemption of any one or more of the several tracts; and plaintiffs, having no title, might well have been held liable to defendant for the rents, issues and profits realized during the period of occupancy, and such sums if recovered by defendant could have been applied by defendant River Farms Company in any manner in which it saw fit.

■ Appellant also contends that if the tax title of the state is valid, defendant has no standing in this action, for the reason that a mere inchoate right to redeem land, the title to which has been conveyed to the state for nonpayment of taxes, cannot support an action to quiet title against the party in possession under claim of title. Here, however, owing to the invalidity of the proceedings, plaintiffs had no title and no possessory rights and a plaintiff in a quiet title action must fall unless he shows title in himself, and is not in a position to complain if someone else, even without title, asserts an interest in the property. Neither plaintiffs nor the appellant were in a position to complain of the recognition of any right in favor of defendant.

■ Also it appeared in evidence that certain general taxes for maintenance of the state were unpaid. The court therefore became bound to provide some means for the payment thereof before it could quiet the title of plaintiffs. The obligation to pay general taxes is as great as the obligation to pay interest to bondholders, and the only way the court could equitably adjust the situation was through a receiver, whereby the taxes would be paid and the state's equities discharged.

■ It is a well-established principle that before a landowner who is in default in the payment of taxes may quiet title or obtain any relief against the taxing agency he must first tender the just amount of any tax due. ■ This the court here attempted to do, but was confronted with so many conflicting equities and the necessity of obtaining cancellation of the state's leases upon proper consideration that a receiver was deemed necessary to work out the problem.

In the present situation the court might perhaps have been justified in dismissing the action and denying any relief to all the parties. Such an order would, however, have left defendant in possession of the property. This being an action in equity, however, it was proper for the court, having once obtained jurisdiction, to do complete justice by deciding the whole case and determining the entire controversy so as to prevent future litigation and multiplicity of suits. The appointment of a receiver was therefore under these circumstances not only convenient but entirely proper.

■ So, also, the criticism of that portion of the decree allowing the River Farms until November 25, 1938, to redeem

on the ground that such a period of time was excessive and inequitable, advanced as appellant's second objection to the decree, is likewise not well taken. In the first place, steps to review the order have already held up the operation of the decree so that that point is no longer an important issue. Aside from that, however, and considering the objection on its merits, the decree in this matter was entered in January, 1938. Recalling that we are dealing with agricultural land situated in the Sacramento Valley and adapted to the production of grain, rice, alfalfa, sugar beets, fruits and forage crops, the granting of some eight or ten months within which to redeem and to adjust various crop credits, cannot be considered unreasonable. In January, when the decree was entered, undoubtedly some lands were already under lease; some lands had been plowed, others perhaps seeded, and on others the crops probably were already developed. Also many crops that had been harvested in the fall of 1937 were still either on hand, in warehouses or the proceeds from the sales had not been returned. The matter was further complicated by the fact that negotiations had to be carried on with the state in order to adjust leases executed by the state to various tenants.

Appellant has failed to show wherein the time allowed by the court was excessive. Even in the foreclosure of a mortgage which ordinarily is much simpler than that which here confronted the court, the law allows a period of redemption of one year. We are satisfied that no abuse of discretion was here shown.

Neither do we see error in the application of the proceeds of the 1938 crops to the redemption of particular tracts rather than applying the same to the tract as a whole or to the particular tract whereon the revenues were produced.

The decree permits the River Farms Company to allocate the total net proceeds of the 1938 crop to such parcels as it may determine. The intervener suggests that thereby River Farms Company is permitted to redeem its better and more productive lands and abandon to the bondholders its land of poorer yield. Also it is claimed that it may cultivate the lands in such manner as to exhaust or reduce fertility to the detriment of the bondholders.

Clearly, the disposal of the crops and the proceeds were within the scope of the court's authority, and the court, very

fairly to all, required that, after the payment of certain charges entitled to priority, all crop proceeds should belong to the district, but be credited on the obligation of the redeeming landowner. There is nothing before us showing any abuse of discretion.

Other objections minor in their effect are urged by appellant to the purpose and form of the decree, but what has been said indicates sufficiently the views of this court.

The judgment is affirmed.

Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 27, 1938.